IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

|  |  |
|---|---|
| AMBER DANIEL, *d/b/a* BLOND APPAREL, <br><br> *Plaintiff* and *Counter Defendant*, <br><br> v. <br><br> ALL THAT SHOW CLOTHING LLC and TAMMY SCHUSTER, <br><br> *Defendants* and *Counter Claimants*. | CIVIL ACTION NO. <br> 3:25-cv-00088-TES |

## ORDER

Before the Court is a Motion for Judgment on the Pleadings [Doc. 24] and a

Motion for Sanctions [Doc. 26] filed by All That Show Clothing LLC and Tammy

Schuster, the defendants and counter claimants in this case. Once the parties fully

briefed the motions, the Court held a hearing at which it orally stated on the record that

both would be denied. [Doc. 36]. The Court addresses the Motion for Judgment on the

Pleadings first.

### A.    Motion for Judgment on the Pleadings

Since material facts concerning the claims in this case remain in dispute, the

Court **DENIES** the Motion for Judgment on the Pleadings. All That Show Clothing LLC

(hereinafter "ATSC") and Tammy Schuster seek judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c). "After the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute[,] and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). If Rule 12(c) is the route to judgment, courts consider only the pleadings—the complaint, answer, and any exhibits to them. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also* Fed. R. Civ. P. 7(a). In determining whether a party is entitled to judgment on the pleadings, courts "accept the facts in the complaint as true and . . . view them in the light most favorable to the nonmoving party." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). If a comparison of the averments in the competing pleadings reveals a dispute of a material fact, judgment on the pleadings must be denied. *See Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).[1]

Substantively, courts apply the same principles to a motion made under Rule 12(c) as they would to a motion to dismiss under Rule 12(b)(6). *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examine[s] [the complaint] under Rule 12(b)(6) or Rule 12(c), the

---

[1] The decisions handed down prior to the close of business on September 30, 1981, by the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth') "shall be binding as precedent in the Eleventh Circuit" for the court of appeals, the district courts, and the bankruptcy courts. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

question [is] the same: whether [the complaint] state[s] a claim for relief.”). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A complaint states a facially plausible claim for relief “when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.* (citation omitted). The complaint must establish “more than a sheer possibility that a defendant has acted unlawfully.” *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (“Factual allegations must be enough to raise a right to relief above the speculative level.”). Ultimately, this inquiry is a “context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” *Iqbal*, 556 U.S. at 679.

In this case, ATSC and Ms. Schuster (collectively referred to as the “Movants”) argue that Plaintiff and Counter Defendant Amber Daniel cannot sustain the claims she asserts in this lawsuit based on a mere allegation that they copied her designs. [Doc. 24, pp. 3, 5]. The claims in this case concern customized equestrian apparel. Ms. Daniel, who owns copyrights in her clothing designs, alleges that she regularly creates shirts for horse shows with original and distinctive styles. [Doc. 1, ¶¶ 23, 27]. A work is original if a designer independently creates the work, and the design possesses “at least some minimal degree of creativity.” *See Feist Publ’ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Naturally, the Movants, on the other hand, state that they “are renowned

worldwide" for *their* "creative and innovative equestrian shirt and horse pad designs" and that Ms. Schuster "has amassed a customer base across the world" who seeks out her custom designs. [Doc. 26, p. 1]. However, after posting a picture of one of her shirts on social media, Ms. Daniel claims that the Movants copied it—copied it down to the "unique motifs, patterns and textures of chosen materials, design of appliques, and placement of appliques on the shirt." [Doc. 1, ¶¶ 43–44, 46]. Most notably, of the factual disputes that remain in the category of questions not answered by the pleadings is *who* "created" the designs in question *first*. While that's not a driving force behind the parties' arguments on the Movant's Motion for Judgment on the Pleadings, the answer to that question will certainly have a substantial impact on this case.

However, for the specifics of the claims in Ms. Daniel's Complaint [Doc. 1], she alleges claims for direct and secondary copyright infringement, a violation of the Lanham Act, and two state law claims that the Movants say are preempted by the federal claims asserted. *See* [Doc. 24, pp. 7–8]. Since the Court declines to shut Ms. Daniel's affirmative claims down via the Movant's Motion for Judgment on the Pleadings, it saves the preemption issue for another day.

### 1.   Copyright Infringement Under 17 U.S.C. § 101 *et seq.*

A claim for copyright infringement requires "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are not original." *Roberts v. Gordy*, 877 F.3d 1024, 1028 (11th Cir. 2017). When it comes to the two shirt designs at

issue in this case—the RTW2 and the Liston—Ms. Daniel has alleged ownership of registered copyrights thereby creating a presumption that the copyrights are valid. *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09–23494–CIV, 2012 WL 28239, at *1 (S.D. Fla. Jan. 5, 2012) (citing 17 U.S.C. § 410(c)); [Doc. 1, ¶¶ 73, 82]. "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

First, created in 2022, "Ms. Daniel applied for copyright registration of the RTW2 design on January 6, 2025." [Doc. 1, ¶¶ 33–34]. Then, in 2024, Ms. Daniel created the Liston design, and she "applied for copyright registration of the [Liston] design on January 6, 2025." [*Id.* at ¶¶ 35–36]. As for the second element of a claim for copyright infringement, it can be proved by demonstrating (1) that the Movants had access to the copyrighted work and (2) that the produced works are substantially similar. *John Mills LLC v. Finley*, No. 2:19-CV-00275-RWS, 2020 WL 6073872, at *2 (N.D. Ga. Apr. 14, 2020) (quoting *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016)).

In response to the Movant's contention that her claims for copyright infringement fail as a matter of law, Ms. Daniel argues that she has adequately pled how her shirts are unique and distinctive through her design and placement of appliques—"the same unique motifs, patterns, and textures" as can be seen in the

Movant's supposed copies. *See, e.g.,* [Doc. 1, ¶¶ 25–28, 46]; *see also* [Doc. 25, pp. 4, 6]. While, as Ms. Daniel concedes, she cannot claim a valid copyright to "familiar symbols and designs by themselves," she stakes her claims for copyright infringement on the notion that she *can* "register a [design] that includes a familiar symbol but as a whole contains a sufficient amount of creative authorship." [Doc. 25, p. 4 (quoting *Urb. Textile, Inc. v. Rue 21, Inc.*, No. 2:14-cv-08285-ODW (FFMx), 2016 WL 6951925, at *4 (C.D. Cal. Nov. 28, 2016))].

Given that the Movants had access to Ms. Daniel's designs via social media and produced shirts that appear strikingly similar, the Court will not dismiss her direct and secondary copyright claims. [Doc. 1, ¶¶ 43, 72–79, 81–91]. Substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982). "An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities . . . ." *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 773 F. Supp. 2d 1288, 1296 (M.D. Fla. 2011) *aff'd*, 476 F. App'x 190 (11th Cir. 2012) (quoting *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567 (M.D. Fla. 1995)). Based on this, it's clear that material facts concerning the copyright-infringement claims in this case remain in dispute. Thus,

6

the Court **DENIES** the Movant's Motion for Judgment for Judgment on the Pleadings with respect to Ms. Daniel's claims for copyright infringement.

### 2.    Lanham Act Violation Under 15 U.S.C. § 1125(a)

Next, as for Ms. Daniel's claim for trade dress infringement under § 43 of the Lanham Act, 15 U.S.C. § 1125(a), she must, in order to establish liability, allege sufficient facts to show (1) her mark is inherently distinctive or has acquired secondary meaning, (2) her mark is primarily non-functional, and (3) the Movant's mark is confusingly similar. *Univ. of Fla. V. KPB, Inc.*, 89 F.3d 773, 776–77 (11th Cir. 1996). "Trade dress is defined as 'the total image of a product . . . [that] may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques.'" *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)).

First, a mark is inherently distinctive if "[its] intrinsic nature serves to identify a particular source"—think "Tide" for laundry detergent in the context of "word marks." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210–11 (2000). Next, product design generally requires a showing of secondary meaning to be protected. *Id.* at 216. Secondary meaning is established by showing that the primary significance of the product in the minds of consumers is *the producer* rather than the actual product itself. *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851, n.11 (1982). So, in addition to protecting registered "marks" that identify a company's goods to indicate "the source of

7

the goods," the Lanham Act, in § 43(a), "gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . .'" *Samara Bros.*, 529 U.S. at 209 (quoting 15 U.S.C. § 1125(a)).

Here, Ms. Daniel has sufficiently alleged that her designs have acquired a secondary meaning through (1) her allegations that she is well known for providing high quality, custom, and one-of-a-kind pieces; (2) her recognition in a prominent equestrian magazine; and (3) her renown within the equestrian show industry. [Doc. 1, ¶¶ 22, 30–31]. Since a "feature" of a product, like how Ms. Daniel's markets and sells her shirts, can also be protectable trade dress, her Lanham Act claim should not be tossed on failure to allege secondary meaning. *Epic Metals Corp.*, 99 F.3d at 1038.

Further, when it comes to the non-functionality of her shirt designs, Ms. Daniel has alleged that she specializes in creating shirts with original designs and distinctive styles. [Doc. 1, ¶ 23]. Trade dress is protectible under § 43(a) only if it is primarily non-functional. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). If the answer to whether trade dress is primarily non-functional is in the negative, the trade dress is not eligible for protection. *Epic Metals Corp.*, 99 F.3d at 1039.

To support the non-functionality component of her Lanham Act claim, Ms. Daniel argues that "[p]art, if not most, of the value of [her] product stems from owning a unique item that no other rider is wearing." [Doc. 25, p. 9 (citing [Doc. 1, ¶ 25])].

Although "[f]unctional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer," a functional feature can be "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1203 (11th Cir. 2004); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001).

Again, on a motion for judgment on the pleadings, courts must accept a plaintiff's allegations as true and evaluate all plausible inferences determined from those facts in her favor. *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1211 (M.D. Fla. 2014). "Furthermore, whether trade dress is 'functional' has been consistently treated as a question of fact"—and for good reason. *Id.* (citing *John H. Harland Co.*, 711 F.2d at 982). Too much remains to be seen—due in large part to the rather naked record before the Court at this time—for the Court to confidently determine whether the appliques, graphic features, and the like Ms. Daniel uses to set her shirt designs apart from everyone else support a finding that her trade dress is non-functional. *But see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775 (1992) (discussing that "a design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection").

Finally, when it comes to the likelihood of confusion between Ms. Daniel's horse-

show shirts and the Movant's alleged copies, the Court looks to several factors, including "the strength of the trade dress, the similarity of design, the similarity of the product, the similarity of retail outlets and purchasers, the similarity of advertising media used, the Movant's intent, and actual confusion." *AmBrit*, 812 F.2d at 1535. In looking just at the two side-by-side images from the pleadings, Ms. Daniel has alleged sufficient facts to demonstrate that these factors weigh in favor of showing there is a substantial likelihood of confusion between the Movant's products and her products. *See, e.g.*, [Doc. 1, ¶¶ 46, 48]. "The similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *AmBrit*, 812 F.2d at 1540. Stripped of all the legal jargon, it boils down to whether *how* Ms. Daniel designs and sells equestrian apparel truly sets her apart from other designers. "The similarity of design test is an inquiry into the overall similarity of the [Movant's] trade dress with that of [Ms. Daniel's]." *Id.*

Considering the above-listed factors in connection with the current record, the Court agrees with Ms. Daniel that material facts on secondary meaning, trade dress, and whether the Movant's designs are confusing remain in dispute. *See id.* at 1535. Accordingly, the Court **DENIES** the Movant's Motion for Judgment on the Pleadings with respect to Ms. Daniel's claim under the Lanham Act as well.

B.       **Motion for Sanctions**

During the Court's hearing, the Movants argued that their efforts to seek Rule 11 sanctions against Ms. Daniel were because she failed to investigate her claims, failed to look at appliable law under the Lanham Act for fashion design claims, and filed suit even after being presented with evidence of prior creation. Putting the nuances for fashion-design law aside, Ms. Daniel counters by arguing that "nothing" in the evidence produced by the Movants "definitively provres" prior creation. At this procedural juncture, the Court must once again agree with Ms. Daniel. [Doc. 25, p. 5]. The evidence provided does not "include a picture of the shirts, sufficiently describe the designs," or prove that the Movants coincidentally "made the same design as Ms. Daniel." [*Id.*].

Further, Rule 11 sanctions are only permissible in the Eleventh Circuit "when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Buckler v. MacGregor*, 634 F. App'x 694, 696 (11th Cir. 2015). This is a relatively high bar to meet. *Cabrera v. Goodyear Tire & Rubber Co.*, No. CIV. 10–21226, 2011 WL 535103, at *2 (S.D. Fla. Feb. 8, 2011). As Ms. Daniel stated during the Court's hearing, Rule 11 is not about who is right on the merits. Rule 11 should not be employed to test the legal sufficiency or efficacy of allegations in the pleadings because other motions are

11

available for those purposes. *Daley v. Bono*, No. 8:18-CV-1465-T-27AAS, 2019 WL 6894836, at *2 (M.D. Fla. Dec. 18, 2019) (quoting Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments)).

For now, it does not appear that Ms. Daniel's case of copied fashion design has been filed with ignorance of applicable law under the Lanham Act. If, however, after the completion of discovery—which is set to expire on April 28, 2026—the Movants believe their request for sanctions should be revisited, they may file another motion for sanctions with the benefit of a more developed record. *Thomas v. Evans*, 880 F.2d 1235, 1243 n.11 (11th Cir. 1989) (discussing that Rule 11 sanctions based on the factual adequacy of a complaint are best considered at the end of litigation, after the parties have moved for summary judgment and have been given notice and an opportunity to identify any genuine issues of material fact). The Motion for Sanctions currently before the Court, though, is **DENIED without prejudice**.

**SO ORDERED**, this 8th day of April, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

12